Good morning, your honors. May it please the court that I am standing out there to set a pallet with Brugnara in this matter. I'd like to assert justice by doing so. It's been run out of the clock, so I'll try to help. Thank you. Mr. Brugnara in this matter was subjected to a set of circumstances which resulted in a trial which was so fundamentally unfair that that result must be reversed. First of all, this case was presented as a case where Mr. Brugnara elicited the purchase of $11 million worth of wonderful art to go into a museum when Mr. Brugnara had neither the ability nor the intention of paying for that art. It wasn't until after Mr. Brugnara was permitted to represent himself in trial and counsel was appointed for those trial, for those conviction proceedings that we learned for the first time that this beautiful, wonderful art was fake and worth next to nothing. Well, it was part of it, right? Not the whole thing. Part of. Part of the art. Well, you said that all of the art was $80,000. Is that a whole thing, or was it just the Koenig and the one other one, which I think was $80,000 worth? There were two minor works, which the experts believe were authentic, which were worth far less than were the prices. The government didn't argue the value, did it? Wasn't it just that they had pulled off what they called a scam? Why did the value make a difference? Well, I think it's, well, first of all, the government argued throughout the trial that this was valuable art. This was, and Mr. Brugnara never had the creditworthiness to pay for this. If we had evidence presented that Mr. Brugnara did have some creditworthiness, there's a big difference between $11 million worth of credit and $80,000 worth of credit. We had evidence presented that Mr. Brugnara had recently closed a loan for $4 million. So that was that aspect of the use in a different light. But the more important factor is that the government chose to rely on its alleged victims as the arbiters of the value of this art. They were experts. Was Dell challenged, though, by your client? He was challenged to the best of his ability, but he didn't have the ability. The second aspect of this case, which makes it so fundamentally unfair, is that Mr. Brugnara is mentally ill. And that mental illness was never acknowledged by the district court. Well, I think that it was raised several times. And there were hearings that determined whether your client was able to represent himself initially. You agree with that, right? There was a prior hearing. But the fundamental issue of his mental illness was never addressed. The court never acknowledged that despite this horrible, obnoxious behavior that he was exhibiting, that that obnoxious, horrible behavior might have mental illness as a result. If I recall correctly, there was specific testimony about bipolar condition, et cetera, et cetera, et cetera. The judge simply believed that your client was dumb as a fox, and that he hadn't connected himself in the way he did because he thought it would help to give him another ground for escaping liability. The judge is entitled to do that, right? First of all, Your Honor, the testimony regarding Mr. Brugnara's mental illness did not comment on sentencing. Mr. Brugnara was not evaluated with proper testing by an expert until after he was convicted and trialed. Is this your best argument, that he didn't get a fair trial because he was mentally ill? Is that your best argument in this case? I don't believe it's my best argument. Well, I think I'd stick with your best argument. That's just my opinion. Your Honor, I think what we have is a set of circumstances that combined made this whole process unfair. But going back to the value of the argument, the fact that Mr. Brugnara was being defrauded himself, I'm not here arguing that it's a defense that he was being defrauded, but the fact that these alleged victims were pushing the sale of art, which they had to know, was not what it was our duty to do. The government was on notice that these people had a history of fraud. Mr. Maybaum has many, many cases in civil courts in New York, the most famous of which involved him selling, through Sotheby's, a statue that was advertised as the real thing, when in fact it was a casting of a casting. Where is that in the record, that that was a reformed jury? That was not represented to the jury. So if it was represented to the jury, what does it have to do with the case? It was presented as part of a sentencing. It was consented by the expert in valuing the art. So it does have to do with the case. But wait a minute, wait a minute. You can reverse a jury if something was not before them. What are you asking us to do? It wasn't before the jury precisely because Mr. Brugnara and his mental illness was permitted to represent himself. He had no ability to get his information. And so you're saying that the district judge should be reversed because he allowed your client to represent himself? I am saying that. And even though the judge went to the end, does that vary with advisory counsel there? Advisory counsel, after the first day of trial, went to Judge Olson and said, look, I believe if I were representing him, I would be telling you, Judge, that he is not confident to represent himself. Judge Olson dismissed the concerns of advisory counsel that is in the record. Well, the question I've got is this, is that, you know, does it square that there's been a formal conversation between Greg Garnack, the ghost's father, in which he makes a statement that he's going to follow none other rules, he's going to say whatever it takes, and he's going to lay it all in, and that the judge be damned, and the judge has this person in front of him, who he knows, he's really an air genius, he's intellectually functioning, and actually does an incredible job of erasing theories and pointing forward ideas, right? And is he really going to do some special kind of justice, look at this person in front of him and say, crazy, like a fox, I'm being played like a cheap violin right now? And how does that work? I don't know. I acknowledge that conversation took place, that Mr. Bernara is one of the most obnoxious people I've ever met, frankly, and that was presented to the court. But we can say that just because somebody is obnoxious, somebody does have these things, that that is not a function of his underlying mental illness. If you look at the diagnosis by Dr. Shields, you'll see that that very behavior is consistent with the diagnosis. At what point is this trial judge supposed to know that something else is going on? I mean, this is not a case. There's 15 findings that contend. There may be a moment when at some point the judge ought to say, hold on, this train seems to be going in some different direction, and why is this going on? When does that happen? When does it become irreversible errors? Most trial judges are not perfect, and we routinely make lots of mistakes, but you're not entitled to a perfect trial, right? And so, as you said, the question is just it's so fundamentally unfair that it violates this counselor's right to a fair trial. When does it become that? How are we supposed to know? First of all, I think that Judge Alston was on notice that there were problems with Mr. Grugnar's behavior even before he represented himself in the hearings. Even when he was represented by counsel, he was unable or unwilling, I don't know, but the behavior was there. He did not remain quiet. He did not follow the rules of court. He had to talk in all of those proceedings. And then, your Honor mentioned the contempt. Contempt is a way of redirecting someone. In Mr. Grugnar's case, it was not redirecting him. In fact, as you go through the trial day by day, you can see his behavior getting worse. By day three of that trial, he was being held in contempt, held in contempt, but he was not retracting the behavior. With respect, Judge Alston is a very experienced district judge, as you know, and he's had lots of trials with difficult defendants. Ultimately, as Judge Erickson points out, the district judge is a human being who has to make the determination when to pull the plug based on your client's conduct. And the fact that there was a forensic hearing before and so on, he knew he was willful. He knew from phone conversations he was going to try to game the court. And from Judge Alston's perspective, it simply never got to the point that he concluded that it was unfair. He figured your client was simply gaming the court, trying as hard as he could to game the court. He lost that bet, but the judge made the determination that he was sane and was able to proceed and be convicted in this case. The standard we use is substration, right? It's a highly deferential situation. From your perspective, can you cite any case that involves these kinds of facts, similar facts where a court of appeal has reversed the district judge based on a completely unfair trial, as you claim in this case? No, Your Honor. We are so far beyond the reservation with these facts that I was not able to find anything analogous. But I think also that if the court takes a close look at the examination of Nick Barbato in this case, you'll see how the illness really impacted this trial. Mr. Brugnaro had in mind, he knew that that witness was going to say certain things that, you know, he was creditworthy, he was this wonderful guy. When that happened, Mr. Brugnaro came unglued. You can see his deterioration in that examination. I don't think that judge also faced with that should have continued the trial. You're saying that because he was acting as his own counsel or just because as a defendant, he wasn't capable of being tried because he was insane? Is that what your point is? I have no specific opinion from an expert that Mr. Brugnaro is or is not competent to stand trial. And that is in part because judge also did not permit us to conduct that examination post-trial. However, had I been trial counsel, I certainly would have demanded that he be examined. I don't believe that given the combination of mental illnesses that he suffers and the effect that his delusions and his self-image have on his ability to deal with the issues in front of him, especially in this context where his ego, his self-image is an issue, that he is capable of assisting counsel. But it's not uncommon. I took a good deal of time reading this. My father-in-law is fascinating. I suppose I spent more time there than I should have. But it struck me where he had a problem with this. He certainly knew how to bend as far as he could to get what he wanted over to the jury. But then when he was facing the judge on sentencing, I don't think a lawyer could have done a better job than his outline that he did on sentencing. Doesn't that strike you as rather significant? What I saw from Mr. Brugnaro at sentencing and really throughout was that he had a set of facts in mind that had nothing to do with the trial, nothing to do with the actual testimony, nothing to do with what was actually before the court. So whereas it needs a good presentation, it has nothing to do with reality, and that is why this is so unfair. It's not an unusual phenomenon with people who are, per se, the criminal defendants lock in with the theory of the case and are never able to pull the evidence together, and in the end they make this glowing argument. And I will say that Mr. Brugnaro made it better than almost anyone I've ever seen, but this is just kind of how pro se stuff works. I mean, they live in a castle in their own mind that they've created, and that doesn't mean that they're incompetent. So why is Mr. Brugnaro different than all the other pro se people we've seen? He's, indeed, historically some of our greatest artists, scientists, mathematicians, and let's just forget the politicians, and we have to be careful what we do. Anyway, we've used up your time. Maybe we'll let you have a little bit more, but we have the argument from the government, so let's let us hear from the government. Thank you. May it please the Court, Meredith Osborne for the United States. As you pointed out, Brugnaro was not entitled to a perfect trial, but here Brugnaro got exactly the trial that he demanded. He did all of his claims, or virtually all of them, to an appeal. Our complaints about choices that he deliberately made, as Judge Wallace pointed out, Brugnaro was incredibly effective at trial and at sentencing. Let's not forget that he was acquitted of three counts. As Judge Wallace said, a lawyer probably couldn't have done a better job in this case, given the evidence, at sentencing. What Brugnaro said was, the arguments that he made were consistent with the arguments that his counsel made. They were sophisticated. He made arguments about his sentencing calculation involving grouping, the guidelines calculation, and he was sentenced well below the government's recommendation in this case. On the art evaluation, Brugnaro's own expert evaluation was that the art was worth hundreds of thousands of dollars. Whether or not he intended to defraud the victims of hundreds of thousands of dollars worth of art, or millions of dollars worth of art, as the jury instruction number 1434 instructed, it did not matter. Therefore, the value of the art was not an issue at trial, and for that reason among others, Brugnaro cannot meet the Harrington Standard for newly discovered evidence, warranting a new trial in this case. I would just say that if every obstreperous defendant was deemed to be severely mentally ill, the defendants would almost never be allowed to represent themselves, and this Court's decisions in Johnson and Thompson instruct that only in the case where a defendant is so severely mentally ill that he's actually obstructing the course of the trial should can a defendant be relieved of his right to represent himself. Here, Brugnaro, by contrast, was doing everything that he could to push the proceedings forward. He wanted to represent himself. He continued to examine witnesses and make arguments throughout, although he was held in contempt numerous times, essentially because of his attempts to cheat during the trial and get an evidence that the trial court had deemed was inadmissible. If there are no questions, I would ask this Court to affirm. I don't think there are any other questions. Thank you, Counsel. So you said your time, but we're going to give you a minute and a half to make a rebuttal, if you'd like. The government has really increased its response time. Thank you, Your Honor. We're going to give you a minute and a half. We're going to wait until he gets to calling you up here. We'll give you two minutes because the clock won't work. So go ahead. I think the court had in Johnson the first argument that maybe a lawyer would have done a better job, but I think a lawyer would have tried a different piece. A lawyer would have had that art valued prior. Which is Ricky or she? I certainly would have. How do you know? If I had been trial counsel, I certainly would have tried. But the reality is that, as my colleague has pointed out, that Mr. Brignaro was actually reasonably effective, pushed a lot of buttons, but he was a relatively effective guy, did really well in the ultimate result. But is that even relevant here yet? If we're at a hearing, he actually got a pretty good result under the circumstances. How can this be an abuse of discretion on the part of the trial judge? I think 15 citations for contempt with no effect on Mr. Brignaro's behavior in a trial which was disrupted by screaming and yelling and name-calling. That's like a Senate hearing. I don't have any doubt at all. This was a very uncomfortable situation for the judge and the jury, and for everybody. I mean, as I read through the transcript, I just wondered, when I was a district court judge, I'm glad I didn't have this case to try. But having said that, the judge also has to decide, well, is he going to take away a constitutional right that was meant to defend himself? He had to protect his right that he had demanded. And balancing that out, it's a judgment call. What's the best case you have that we can read where we have held in our court that the district judge should have taken away that constitutional right based upon condemnation? I think the Eleanor C. Allen is an important case to consider and also U.K. members, et cetera. I asked you before if I was kind of wondering what we've done out here on it. Do you have one from the Ninth Circuit? I think the Ninth Circuit is better than the Supreme Court. I do not, Your Honor. Okay. Thank you very much. Thank you very much, both of you, for your argument on this very interesting case. And the case I just argued is submitted. The court stands in recess for the day.
judges: Wallace, M. Smith, Erickson